Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

Attorneys for Plaintiff
SALVADOR GARCIA JR.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| SALVADOR GARCIA JR.,<br><br>                    Plaintiff,<br><br>vs.<br><br>COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, SCOTT JONES, DYLAN BLACK, ROYCE AUSTIN, and DARIO BARRON,<br><br>                    Defendants. | Case No. 2:23-cv-00899-DAD-KJN<br><br>**PLAINTIFF'S OPPOSITION TO MEGHAN MCEVILLY'S MOTION TO QUASH SUBPOENA**<br><br>Date:        April 2, 2024<br>Time:        10:00 a.m.<br>Location:    [Remote Appearance]<br>             Robert T. Matsui U.S. Courthouse<br>             501 I Street<br>             Sacramento, CA 95814<br>Courtroom:   25 (8th Floor)<br>Magistrate<br>Judge:       Hon. Kendall J. Newman |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................1

II.   STATEMENT OF RELEVANT FACTS AND PROCEEDINGS ........................................1

III.  ARGUMENT .....................................................................................................................3

  A.   NON-COMPLIANCE WITH LOCAL RULES ....................................................4

    1.   Local Rule 251(a): Discovery Dispute Procedure ....................................4

    2.   Local Rule 251(b): Meet-and-Confer .......................................................4

    3.   Local Rule 251(c): Joint Statement ...........................................................5

    4.   Local Rule 230(b): Hearing Date ..............................................................5

  B.   UNTIMELY OBJECTIONS ..................................................................................6

  C.   UNTIMELY MOTION TO QUASH .....................................................................7

  D.   NO "GOOD CAUSE" FOR PROTECTIVE ORDER ...........................................8

    1.   Specific Prejudice or Particularized Harm ...............................................9

    2.   Private Interests vs. Public Interests ........................................................11

  E.   NO BASIS OR SUPPORT FOR SANCTIONS ...................................................12

IV.   CONCLUSION .................................................................................................................14

**PLAINTIFF'S OPPOSITION TO MEGHAN MCEVILLY'S MOTION TO QUASH SUBPOENA**
*Garcia v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00899-DAD-KJN

## TABLE OF AUTHORITIES

C<small>ASES</small>

*Allstate Ins. Co. v. Nassiri*, 2011 U.S. Dist. LEXIS 119377 (D. Nev. Oct. 14, 2011) ...............................8

*BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171 (N.D. Ill. 2018)..................7

*Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992)....................................................9

*Brooks v. Detroit Baptist Manor*, 2012 U.S. Dist. LEXIS 128219 (E.D. Mich. Sep. 10, 2012) ...............10

*Bunn v. Dash*, 2021 U.S. Dist. LEXIS 204163 (C.D. Cal. Aug. 29, 2021) ...................................................4

*Cal. Sportfishing Prot. All. v. Chico Scrap Metal*, 2014 U.S. Dist. LEXIS 144173 (E.D. Cal. Oct. 9, 2014).6

*Campos v. Webb County*, 288 F.R.D. 134 (S.D. Tex. 2012) ......................................................11

*Cardoza v. Bloomin' Brands*, 141 F. Supp. 3d 1137 (D. Nev. 2015).............................................................7

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108 (3d Cir. 1986) ..................................................9, 12

*Delmonte-Wright v. Geico Cas. Co.*, 2019 U.S. Dist. LEXIS 193587 (D. Nev. Nov. 7, 2019) ...............7, 8

*Evans v. City of Vallejo*, 2018 U.S. Dist. LEXIS 164658 (E.D. Cal. Sep. 24, 2018) .............................4, 5

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) ........................................10

*Giddens v. Suisun City*, 2015 U.S. Dist. LEXIS 20782 (E.D. Cal. Feb. 20, 2015) ....................................4

*Hedges v. Resolution Tr. Corp.*, 32 F.3d 1360 (9th Cir. 1994)....................................................10

*In re Hanford Nuclear Reservation Litig.*, 2006 U.S. Dist. LEXIS 102572 (E.D. Wash. Feb. 22, 2006)....8

*In re Roman Catholic Archbishop*, 661 F.3d 417 (9th Cir. 2011) ....................................................9, 11, 12

*Legal Voice v. Stormans Inc.*, 738 F.3d 1178 (9th Cir. 2013) ............................................................12, 13

*LHF Prods., Inc. v. Kabala*, 2018 U.S. Dist. LEXIS 245809 (D. Nev. July 6, 2018)................................8

*Maleski v. Landberg*, 1996 U.S. Dist. LEXIS 1492 (S.D.N.Y. Feb. 9, 1996).............................................7

*MGM Grand Hotel v. Long*, 2022 U.S. Dist. LEXIS 54920 (D. Nev. Mar. 25, 2022)...............................8

*Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 U.S. Dist. LEXIS 16128 (E.D. Cal. Feb. 7, 2011)............7

*Morgan Hill Concerned Parents v. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 109451 (E.D. Cal. Aug. 17, 2016) ..4

*Mount Hope Church v. Bash Back*, 705 F.3d 418 (9th Cir. 2012).............................................................13

*Mountjoy v. Bank of Am. N.A.*, 2022 U.S. Dist. LEXIS 46270 (E.D. Cal. Mar. 14, 2022) .....................4, 5

*Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint.*, 316 F.R.D. 327 (D. Nev. 2016)......7

*Nelson v. County of Sacramento*, 2014 U.S. Dist. LEXIS 90613 (E.D. Cal. July 1, 2014).......................11

*Odyssey Reinsurance Co. v. Nagby*, 2018 U.S. Dist. LEXIS 53520 (S.D. Cal. Mar. 29, 2018) ..................6

*Peccia v. State Dep't of Corr. & Rehab.*, 2021 U.S. Dist. LEXIS 91784 (E.D. Cal. May 13, 2021).......4, 5

*Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257 (9th Cir. 1964) ........................................................7

*Primack v. Ohio Sec. Ins. Co.*, 2018 U.S. Dist. LEXIS 202038 (D. Nev. Nov. 29, 2018)..........................8

*Reloj v. Gov't Emps. Ins. Co.*, 2023 U.S. Dist. LEXIS 206629 (S.D. Cal. Nov. 17, 2023) .........................7

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) .........................................6

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) .............................................................................10

*Stanek v. St. Charles Comm. Sch. Dist. # 303*, 2020 U.S. Dist. LEXIS 47528 (N.D. Ill. Mar. 19, 2020)..11

*Union First Mkt. Bank v. Bly*, 2014 U.S. Dist. LEXIS 1027 (E.D. Va. Jan. 6, 2014) ...............................11

*WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481 (S.D. Cal. Mar. 22, 2007) ...........10

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) ....................................................................13

*Welsh v. City & County of San Francisco*, 887 F. Supp. 1293 (N.D. Cal. 1995) .......................................10

*Williams v. Camden USA Inc.*, 2021 U.S. Dist. LEXIS 133085 (S.D. Cal. July 16, 2021).......................11

<u>RULES</u>

E.D. Cal. L.R. 230(b)..................................................................................................................................5

E.D. Cal. L.R. 251.......................................................................................................................................4

E.D. Cal. L.R. 251(b)...............................................................................................................................4, 5

E.D. Cal. L.R. 251(c) ..................................................................................................................................5

E.D. Cal. L.R. 251(f)....................................................................................................................................4

Fed. R. Civ. P. 26(c)(1)...............................................................................................................................9

Fed. R. Civ. P. 45(d)(1)..............................................................................................................................12

Fed. R. Civ. P. 45(d)(2)(B) ..........................................................................................................................6

Fed. R. Civ. P. 45(d)(3)(A) ..........................................................................................................................3

**PLAINTIFF'S OPPOSITION TO MEGHAN MCEVILLY'S MOTION TO QUASH SUBPOENA**
*Garcia v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00899-DAD-KJN

## I.   INTRODUCTION

Plaintiff opposes Meghan McEvilly's motion to quash subpoena, ECF No. 19.

## II.   STATEMENT OF RELEVANT FACTS AND PROCEEDINGS

Generally, this action arises from the use of excessive force against Salvador Garcia Jr. caused when Roscoe, a police canine, was improperly deployed by Dylan Black, a sheriff's deputy employed by the Sacramento County Sheriff's Department on September 17, 2022.

On May 12, 2023, Plaintiff Salvador Garcia Jr. ("Plaintiff") filed a Complaint initiating this action. ECF No. 1.

On December 8, 2023, Plaintiff filed the currently-operative First Amended Complaint against Defendants County of Sacramento, Sacramento County Sheriff's Department, Scott Jones, Dylan Black, Royce Austin, and Dario Barron (collectively, "Defendants"). ECF No. 17.

In discovery, Defendants produced police reports related to the police canine deployment incident giving rise to this action, including a report from Plaintiff's ex-girlfriend Meghan McEvilly which alleged, immediately prior to the police canine deployment, *inter alia*, that:

- "[MCEVILLY] stated GARCIA had broken [the window of her residence] by unknown means while he was there prior to [the officers'] arrival." Declaration of Mark E. Merin ("Merin Decl.") Exhibit ("Ex.") 1 at DEF 00005.

- "MCEVILLY stated GARCIA had been harassing her over the phone which caused her to fear for her safety." *Id*. Ex. 1 at DEF 00005.

- "MCEVILLY had advised [the police] communications center that GARCIA had called her back and told her he was on his way back to her house on his bicycle." *Id*. Ex. 1 at DEF 00005.

Plaintiff disputes Ms. McEvilly's account and reports to police.

On January 9, 2024, Plaintiff issued a subpoena for deposition and production of documents to Ms. McEvilly, with a production date of February 12, 2024. Merin Decl. Ex. 2.

On January 13, 2024, Ms. McEvilly was personally served with the subpoena. Merin Decl. Ex. 3.

On January 17, 2024, Ms. McEvilly contacted Plaintiff's counsel's office by telephone and left a voicemail message. Merin Decl. Ex. 4. Therein, Ms. McEvilly stated that she was not available to attend

1

the deposition noticed for February 12, 2024, and asked for a return call. *Id*.

On January 19, 2024, Plaintiff's counsel returned Ms. McEvilly's call by telephone. Merin Decl. ¶ 6. Therein, Ms. McEvilly informed Plaintiff's counsel that she was not available to attend the deposition noticed for February 12, 2024, and asked for an alternative date to appear. *Id*. Ms. McEvilly and Plaintiff's counsel discussed dates of availability and mutually agreed to re-schedule her deposition and production date for March 11, 2024. *Id*.[1]

Later, on January 19, 2024, Plaintiff issued an amended subpoena for deposition and production of documents to Ms. McEvilly, with a production date of March 11, 2024. Merin Decl. Ex. 5.

On January 25, 2024, Ms. McEvilly contacted Plaintiff's counsel's office by telephone and left a voicemail message. Merin Decl. Ex. 6. Therein, Ms. McEvilly asked that another copy of the amended subpoena be sent due to concerns about the reliability of her mail. *Id*.

Later, on January 25, 2024, Plaintiff's counsel sent Ms. McEvilly another copy of the amended subpoena by email. Merin Decl. Ex. 7.

On February 1, 2024, Ms. McEvilly's counsel, Colleen Mulgrew, sent a letter to Plaintiff's counsel. Merin Decl. Ex. 8. Therein, Ms. McEvilly's counsel stated, *inter alia*, that: "I will be appearing with [Ms. McEvilly] as her counsel to represent her at any deposition … and I am not available on that date [March 11, 2024]"; and "We are going to object to this deposition going forth and absent an agreement to cancel the deposition, we will file for a protective order preventing any deposition" because "[Mr. Garcia] has repeatedly engaged in the stalking and harassment of [Ms. McEvilly]." *Id*.

On February 5, 2024, Plaintiff's counsel sent an email to Ms. McEvilly's counsel in response to her letter. Merin Decl. Ex. 9. Therein, Plaintiff's counsel stated:

> Thank you for your emailed letter requesting that we withdraw the deposition subpoena we had served on your client Ms. Megan McEvilly. While we will not withdraw the deposition, I believe I understand your client's concerns. But [the] reason we have subpoenaed her for a deposition is that we have a vastly different understanding of the facts which are relevant to Mr. Garcia's case, but we are willing to address a concern of Ms McEvilly that she might have to have contact with Mr. Garcia. We have no intention of having him physically present during the deposition. While we are not willing to withdraw the subpoena or to forego the deposition we are willing to reset it at a time that

---

[1] Ms. McEvilly is a member of the State Bar of California and, thus, presumably has a general understanding of subpoenas. *See* <https://apps.calbar.ca.gov/attorney/Licensee/Detail/238314>.

may be more convenient for your client; we are even willing to conduct the deposition by zoom, if that might assuage some of your client's concerns. If, despite our willingness to accommodate some of your client's concerns, she still refuses to attend a deposition and will not agree to an alternate date for the deposition, please proceed to move for a protective order but the motion should be made before the date now scheduled for the deposition or we will expect her to appear and if she does not appear and there is no order issued staying the deposition pending resolution of your motion for a protective order, we will move for sanctions for her failure to appear.

*Id.*

Ms. McEvilly's counsel never contacted Plaintiff's counsel to discuss the rescheduling or suggested accommodations for the deposition and production date of March 11, 2024. Merin Decl. ¶ 12.

On March 6, 2024, Ms. McEvilly filed a motion to quash the subpoena. ECF No. 19 ("Motion").

On March 7, 2024, Plaintiff's counsel sent an email to Ms. McEvilly's counsel. Merin Decl. Ex. 10. Therein, Plaintiff's counsel requested confirmation "whether Ms. McEvilly will appear on Monday, March 11 for the currently-noticed deposition and production date." *Id.*

Later, on March 7, 2024, Ms. McEvilly's counsel sent an email to Plaintiff's counsel. Merin Decl. Ex. 11. Therein, Ms. McEvilly's counsel confirmed that "[Ms. McEvilly] will not be appearing" for her March 11 deposition and production. *Id.*

On March 11, 2024, before 10:00 a.m., Plaintiff's counsel telephoned Ms. McEvilly's counsel. Merin Decl. ¶ 15. Therein, Ms. McEvilly's counsel stated that Ms. McEvilly would not comply with the subpoena and, instead, she would wait to see how the Court responded to the filed motion to quash. *Id.*

Later, on March 11, 2024, at 10:00 a.m., Ms. McEvilly failed to comply with the subpoena to appear at her deposition and produce documents. Merin Decl. ¶ 16.

### III.   ARGUMENT

Federal Rule of Civil Procedure 45 authorizes a court to quash subpoenas served on a non-party in certain mandatory and discretionary circumstances. As relevant here, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

"The party who moves to quash a subpoena has the 'burden of persuasion' under Rule 45(d)(3)."

3

*Bunn v. Dash*, 2021 U.S. Dist. LEXIS 204163, at *9 (C.D. Cal. Aug. 29, 2021) (collecting cases).

## A.   NON-COMPLIANCE WITH LOCAL RULES

"The parties are responsible for their own awareness of the Federal Rules of Civil Procedure, this court's Local Rules, and the standing orders of the judges before whom they are proceeding." *Evans v. City of Vallejo*, 2018 U.S. Dist. LEXIS 164658, at *5 (E.D. Cal. Sep. 24, 2018).

### 1.   Local Rule 251(a): Discovery Dispute Procedure

"[M]otions dealing with discovery matters," including those made "pursuant to Fed. R. Civ. P. 26 through 37 and 45," are governed by the discovery dispute procedures under the Local Rules. *See* E.D. Cal. L.R. 251. Unlike other non-discovery matters, "the provisions of [Local Rule] 230 shall not apply to motions and hearings dealing with discovery matters." E.D. Cal. L.R. 251(f).

Ms. McEvilly's motion to quash seeks "a protective order to quash the subpoenaed deposition of Meghan McEvilly scheduled for March 11, 2024." Motion at 1. Accordingly, Ms. McEvilly was required to comply with the procedures of Local Rule 251. *See*, *e.g.*, *Mountjoy v. Bank of Am. N.A.*, 2022 U.S. Dist. LEXIS 46270, at *1–2 (E.D. Cal. Mar. 14, 2022); *Peccia v. State Dep't of Corr. & Rehab.*, 2021 U.S. Dist. LEXIS 91784, at *2 (E.D. Cal. May 13, 2021); *Giddens v. Suisun City*, 2015 U.S. Dist. LEXIS 20782, at *2 (E.D. Cal. Feb. 20, 2015) ("A motion to quash the subpoena is a 'discovery' motion pursuant to [Local Rule] 251"). Thus, because Ms. McEvilly failed to comply with Local Rule 251, her motion should be denied. *See id*.

### 2.   Local Rule 251(b): Meet-and-Confer

"[A] motion made pursuant to Fed. R. Civ. P. 26 through 37 … shall not be heard unless [] the parties have conferred and attempted to resolve their differences…" E.D. Cal. L.R. 251(b). "To satisfy the 'meet and confer' requirement, the parties must have conferred and actually attempted to resolve their differences." *Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 109451, at *6 (E.D. Cal. Aug. 17, 2016).

Plaintiff's counsel has attempted to meet-and-confer with Ms. McEvilly and her counsel, including accommodating her concerns. *See* Merin Decl. ¶ 6 (agreeing to continue the deposition and production date to a more convenient date for Ms. McEvilly, per her request); *id*. Ex. 9 ("[W]e are willing to address a concern of Ms McEvilly that she might have to have contact with Mr. Garcia. We

have no intention of having him physically present during the deposition. . . . [W]e are willing to reset it at a time that may be more convenient for your client; we are even willing to conduct the deposition by zoom, if that might assuage some of your client's concerns."). But Ms. McEvilly did not respond to these efforts prior to filing her motion. *See* Merin Decl. ¶ 12; *see also* E.D. Cal. L.R. 251(b) ("Counsel for the <u>moving party</u> or prospective moving party shall be responsible for arranging the conference, which shall be held at a time and place and in a manner mutually convenient to counsel." (emphasis added)). "A court can deny a motion … solely because of a party's failure to meet and confer prior to filing the motion." *Evans v. City of Vallejo*, 2018 U.S. Dist. LEXIS 164658, at *4 (E.D. Cal. Sep. 24, 2018) (collecting cases). Thus, because Ms. McEvilly failed adequately to meet-and-confer, her motion should be denied. *See id.*

### 3.    Local Rule 251(c): Joint Statement

A moving party "shall draft and file a document entitled 'Joint Statement re Discovery Disagreement,'" wherein "[a]ll parties who are concerned with the discovery motion shall assist in the preparation of, and shall sign, the Joint Statement…" E.D. Cal. L.R. 251(c).

Ms. McEvilly's motion to quash is not filed as a joint statement, as required by Local Rule 251(c). *See* ECF No. 19; *see also Mountjoy v. Bank of Am. N.A.*, 2022 U.S. Dist. LEXIS 46270, at *2 (E.D. Cal. Mar. 14, 2022) ("no Joint Statement was filed"); *Peccia v. State Dep't of Corr. & Rehab.*, 2021 U.S. Dist. LEXIS 91784, at *2 (E.D. Cal. May 13, 2021) (the parties "were required to meet and confer … and to submit a Joint Statement if the matter could not be resolved"). Thus, because Ms. McEvilly failed to comply with Local Rule 251(c), her motion should be denied. *See id.*

### 4.    Local Rule 230(b): Hearing Date

"[A]ll motions shall be noticed on the motion calendar of the assigned Judge or Magistrate Judge" and "the motion is to be heard not less than thirty-five (35) days after service and filing of the motion." E.D. Cal. L.R. 230(b).

Accordingly, even if Ms. McEvilly were permitted to file her motion as a stand-alone, non-discovery matter outside the scope of the procedures governed by Local Rule 251, nonetheless, she has failed to comply with the notice and timing provisions of Local Rule 230. Ms. McEvilly's motion was filed on March 6, 2024, with a hearing date notice on April 2, 2024—*i.e.*, a hearing date set for 27 days

5

after service and filing of the motion. *See* ECF No. 19. Thus, because Ms. McEvilly failed to comply with Local Rule 230(b), her motion should be denied. *See id*.

## B.    UNTIMELY OBJECTIONS

"A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).

On January 13, 2024, Plaintiff personally served Ms. McEvilly with the subpoena. Merin Decl. Ex. 3. On January 17, 2024, Ms. McEvilly objected to the date of the deposition and production scheduled on February 12, 2024. *Id*. Ex. 4. Thus, Ms. McEvilly's objection to the February 12, 2024, date was timely, where it was made four days after subpoena service. *Compare id*. Ex. 3 *with id*. Ex. 4. Thereafter, Plaintiff's counsel and Ms. McEvilly spoke on the telephone and agreed to reschedule the deposition and production date to occur on the mutually-convenient date of March 11, 2024. *Id*. ¶ 6.

Thereafter, on February 1, 2024, Ms. McEvilly's counsel sent a letter stating that Ms. McEvilly objected to appearing at *any* deposition and would not appear at the rescheduled date of March 11, 2024. Merin Decl. Ex. 8. But Ms. McEvilly's objections were untimely, where they were made 19 days after subpoena service. *Compare id*. Ex. 3 *with id*. Ex. 8. "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). "It is also true that potential objections not contained within a timely response are waived, meaning that new objections raised in an untimely supplemental response will not be considered." *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 2014 U.S. Dist. LEXIS 144173, at *11 (E.D. Cal. Oct. 9, 2014). Thus, Ms. McEvilly's objections asserted on February 1, 2024, were untimely and waived. *See*, *e.g.*, *Odyssey Reinsurance Co. v. Nagby*, 2018 U.S. Dist. LEXIS 53520, at *3–4 (S.D. Cal. Mar. 29, 2018) (objections to subpoena sent "six days late—in a letter to Plaintiff's counsel" were waived, where "Rule 45 clearly sets the default maximum objection deadline at 14 days").

Further, Ms. McEvilly is a member of the State Bar of California. *See*

6

<https://apps.calbar.ca.gov/attorney/Licensee/Detail/238314>. Thus, where Ms. McEvilly negotiated and agreed to a rescheduled deposition date of March 11, 2024, she should have understood that she was bound to comply with the agreement. *See*, *e.g.*, *Maleski v. Landberg*, 1996 U.S. Dist. LEXIS 1492, at *1–2 (S.D.N.Y. Feb. 9, 1996) (where a party has "reneged on agreements to provide discovery, . . . [e]ven a non-lawyer would know that [these] actions were patently unacceptable"); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 174 (N.D. Ill. 2018) (collecting cases for the proposition that "[i]t should be rather obvious to counsel that it will be held to that promise" and "[a]nything less would be unethical").

## C.    UNTIMELY MOTION TO QUASH

"When a deposition is properly noticed, the opposing party must obtain a protective order before the deposition date to relieve the deponent of the duty to appear." *See*, *e.g.*, *Reloj v. Gov't Emps. Ins. Co.*, 2023 U.S. Dist. LEXIS 206629, at *9 (S.D. Cal. Nov. 17, 2023) (citing *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964)); *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 336 (D. Nev. 2016) ("a party is not empowered to grant itself, *de facto*, the relief it seeks from the Court by delaying in filing a motion to such an extent that it cannot be resolved prior to the scheduled event"); *see also Delmonte-Wright v. Geico Cas. Co.*, 2019 U.S. Dist. LEXIS 193587, at *5 (D. Nev. Nov. 7, 2019) ("Only an order from the Court actually relieves a witness from appearing at a deposition. An attorney is living dangerously in advising a client that she may [not appear] notwithstanding a scheduled deposition when there has been no stipulation with opposing counsel to move the deposition date and no order from the Court vacating it.").[2] Accordingly, "[w]hen an attorney knows of the existence of a dispute and unreasonably delays in bringing that dispute to the Court's attention until the eleventh hour, the attorney has created the emergency situation and the request for relief may be denied outright." *Cardoza v. Bloomin' Brands*, 141 F. Supp. 3d 1137, 1143 (D. Nev. 2015).

---

[2] Based on these authorities, Ms. McEvilly's "request[] [that] this [C]ourt stay all depositions until it rules on this motion," Motion at 9, is completely without merit. Ms. McEvilly has not even attempted to explain why she can satisfy the standard for staying "all depositions." *See*, *e.g.*, *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 U.S. Dist. LEXIS 16128, at *16–28 (E.D. Cal. Feb. 7, 2011) (outlining standards applicable to a stay of discovery).

7

Ms. McEvilly was aware of her deposition on January 13, 2024, when she was personally served with the subpoena. Merin Decl. Ex. 3. But Ms. McEvilly waited 58 days before filing a motion to quash. *Compare* Merin Decl. Ex. 3 *with* ECF No. 19. Significantly, during Ms. McEvilly's delay in filing a motion, she misled Plaintiff's counsel by agreeing to a rescheduled date of March 11, 2024, *see* Merin Decl. ¶ 6—an agreement which Ms. McEvilly apparently had no intention of honoring. Thus, Ms. McEvilly's motion to quash should be denied as untimely. *See*, *e.g.*, *Allstate Ins. Co. v. Nassiri*, 2011 U.S. Dist. LEXIS 119377, at *4 (D. Nev. Oct. 14, 2011) ("motion was untimely," where "[deponent] had three weeks notice of the deposition, yet filed his motion only three business days before the deposition's scheduled date"); *In re Hanford Nuclear Reservation Litig.*, 2006 U.S. Dist. LEXIS 102572, at *133–34 (E.D. Wash. Feb. 22, 2006) ("The Motion was filed less than two days before the [February 22, 2006] deposition was scheduled although Defendants received notice of the deposition on January 31, 2006. There is insufficient time to address the protective order…"); *LHF Prods., Inc. v. Kabala*, 2018 U.S. Dist. LEXIS 245809, at *5 (D. Nev. July 6, 2018) ("[The party] did not file the motion for protective order until the Thursday night before a Monday deposition despite having ample notice of the deposition. Its motion is untimely."); *Primack v. Ohio Sec. Ins. Co.*, 2018 U.S. Dist. LEXIS 202038, at *2–3 (D. Nev. Nov. 29, 2018) ("The intent to take these depositions [on November 29 and 30, 2018] has been known for weeks. . . . Indeed, counsel threatened to seek relief from the Court back on November 19, 2018. Nonetheless, the instant motion was filed at 8:24 p.m. on November 28, 2018. In doing so, it is clear that counsel is attempting to grant himself the relief of vacating the depositions." (internal citations omitted)); *Delmonte-Wright v. Geico Cas. Co.*, 2019 U.S. Dist. LEXIS 193587, at *4 (D. Nev. Nov. 7, 2019) ("counsel was provided 55-days' notice of the deposition, but did not file a motion for relief until four business days before the deposition was scheduled to take place"); *MGM Grand Hotel v. Long*, 2022 U.S. Dist. LEXIS 54920, at *3–4 (D. Nev. Mar. 25, 2022) (deposition "set to occur on March 29, 2022," party "had notice of this deposition since *at least* March 7, 2022," but party failed to file "motion until 4:40 p.m. on March 24, 2022, which left roughly two court days to resolve the motion").

**D.    NO "GOOD CAUSE" FOR PROTECTIVE ORDER**

Ms. McEvilly argues that there is "good cause" for a protective order precluding her deposition pursuant to Rule 26(c). Motion at 6–7.

8

"A party or any person from whom discovery is sought may move for a protective order… The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c)(1). "A court considering a motion for … protective order must proceed in two steps." *In re Roman Catholic Archbishop*, 661 F.3d 417, 424 (9th Cir. 2011). "Rule 26(c) places the burden of persuasion on the party seeking the protective order." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

"First, [the court] must determine whether particularized harm will result from disclosure of information to the public." *Archbishop*, 661 F.3d at 424 (internal citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted). "Rather, the person seeking protection from disclosure must allege specific prejudice or harm." *Archbishop*, 661 F.3d at 424 (internal citation omitted).

"Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether [] a protective order is necessary." *Archbishop*, 661 F.3d at 424 (internal citation & alteration omitted). This balancing test requires consideration of several factors, including: "(1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Id*. at 424 & n.5 (citation omitted).

### 1. Specific Prejudice or Particularized Harm

"The party opposing disclosure has the burden of proving 'good cause,' which requires a showing that specific prejudice or harm will result if the protective order is not granted." *Archbishop*, 661 F.3d at 424 (internal citation omitted). Generally, this "requir[es] [the] party requesting a protective order to provide specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm[.]" *See*, *e.g.*, *Foltz v. State Farm Mut. Auto.*

9

*Ins. Co.*, 331 F.3d 1122, 1130–31 (9th Cir. 2003) (internal citation omitted); *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("The moving party must present a factual showing of a particular and specific need for the protective order.").

*First*, Ms. McEvilly argues that "there is no need for Ms. McEvilly's deposition" because "[h]er testimony will not aid Mr. Garcia," where "she has no direct knowledge of what occurred during the arrest by police." Motion at 7. But Ms. McEvilly's argument is not related to any particular legal standard. In fact, through discovery, Plaintiff "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and the "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *See* Fed. R. Civ. P. 26(b)(1). Ms. McEvilly's testimony is directly relevant to Plaintiff's case, where she was the reporting party who met with law enforcement and, ultimately, pursued them to locate and arrest Plaintiff. *See* Merin Decl. Ex. 1 at DEF 00005. Thus, Ms. McEvilly "is likely to have unique first-hand knowledge of the facts at issue in this case." *See WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, at *15 (S.D. Cal. Mar. 22, 2007). For example, these facts include the severity of the crime at issue and threat to safety alleged by Ms. McEvilly, when she requested that law enforcement arrest Plaintiff. *See*, *e.g.*, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (observing that the analysis includes "*all* the relevant circumstances," including "the severity of the crime at issue" and "whether the suspect poses an immediate threat to the safety of the officers or others" (citation omitted)).

*Second*, Ms. McEvilly argues that "harm done to her emotionally has already started with the service of the subpoena," including the "expense of [] bringing [a] motion to quash and for a protective order" and "increased anxiety" and "depression." Motion at 7. Initially, "there is no absolute right to counsel in civil proceedings." *Hedges v. Resolution Tr. Corp.*, 32 F.3d 1360, 1363 (9th Cir. 1994). Thus, Ms. McEvilly was not obligated to retain an attorney; rather, she chose to do so at her own expense. *See*, *e.g.*, *Brooks v. Detroit Baptist Manor*, 2012 U.S. Dist. LEXIS 128219, at *10–11 (E.D. Mich. Sep. 10, 2012) ("The Court is aware that there would be a cost involved in obtaining counsel and that [the deponent] would likely have to bear that burden. . . . . [T]he Court finds that this argument is insufficient to support a showing of good cause to grant the protective order."). Indeed, Ms. McEvilly was able to contact Plaintiff's counsel and reschedule her deposition on her own, *without an attorney*. *See* Merin

10

Decl. Ex. 4, 5, 6, 7. Further, Ms. McEvilly's decision to expend costs to retain an attorney is undercut by the quality of the motion to quash which she has filed where, as discussed above, the motion does not comply with Local Rules in several respects and was untimely filed. Thus, it is not clear why Ms. McEvilly takes the position that retaining counsel was necessary.

Additionally, Ms. McEvilly's declaration is not sufficient evidence to satisfy the "good cause" standard, where it does not "provide a specific and documented factual showing of a likelihood of harm posed by the taking of [her] deposition." *See*, *e.g.*, *Nelson v. County of Sacramento*, 2014 U.S. Dist. LEXIS 90613, at *8 (E.D. Cal. July 1, 2014); *Stanek v. St. Charles Comm. Unit Sch. Dist. # 303*, 2020 U.S. Dist. LEXIS 47528, at *11 (N.D. Ill. Mar. 19, 2020) ("none of the [] documentation even addresses the hypothetical impact that sitting for an oral deposition would have on [the deponent]'s health, let alone makes the required showing that subjecting [the deponent] to an oral deposition would be dangerous to his health"); *Union First Mkt. Bank v. Bly*, 2014 U.S. Dist. LEXIS 1027, at *13 (E.D. Va. Jan. 6, 2014) ("submission of … an affidavit and two opinion letters from [the deponent's] primary care doctor, each stating that a deposition would be too stressful" did "not me[et] his burden to show that a protective order [wa]s appropriate"); *Campos v. Webb County*, 288 F.R.D. 134, 136–37 (S.D. Tex. 2012) (collecting cases for the proposition that "statements [relating to potential harm caused by a prospective deposition] to be inadequate because of their conclusory or speculative nature").

Finally, even if Ms. McEvilly's concerns were adequately supported, Plaintiff has already agreed to multiple accommodations, including by ensuring that Plaintiff is not "physically present during the deposition"; "reset[ting] [the deposition] at a time that may be more convenient"; and "conduct[ing] the deposition by [Z]oom." Merin Decl. Ex. 9. Accordingly, Plaintiff's proposed accommodations constitute "sufficient safeguards in place to mitigate [Ms. McEvilly]'s concerns…" *See Williams v. Camden USA Inc.*, 2021 U.S. Dist. LEXIS 133085, at *11–12 (S.D. Cal. July 16, 2021).

Thus, Ms. McEvilly cannot demonstrate specific prejudice or harm.

### 2.    Private Interests vs. Public Interests

"A court considering a motion for a … protective order must proceed in two steps." *Archbishop*, 661 F.3d at 424 (emphasis added). Specifically, "if the court concludes that [] harm will result… , then it must proceed to balance the public and private interests to decide whether [] a protective order is

11

necessary." *Id.* (emphasis added, internal citation & alteration omitted).

Ms. McEvilly does not even attempt to address the balancing of the public and private interests related to her motion. *See* Motion at 6–7. But it is mandatory step for issuance of a protective order. *See Archbishop*, 661 F.3d at 424. Thus, on the basis alone, Ms. McEvilly has failed to carry the "burden of proving 'good cause.'" *See Archbishop*, 661 F.3d at 424; *Cipollone*, 785 F.2d at 1121.

## E.    NO BASIS OR SUPPORT FOR SANCTIONS

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). An award of sanctions under "Rule 45(d)(1) is discretionary." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). For example, "[m]erely losing a motion … does not expose a party to Rule 45 sanctions" and "the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which … should not give rise to sanctions." *Id.* "A court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.* Ultimately, a court should "put more emphasis on the recipient's burden than on the issuer's motives." *Id.* at 1186 (internal citation omitted).

Ms. McEvilly makes a "sanction request" against Plaintiff in the amount of $4,167, which includes: (1) $2,500, where "Ms. McEvilly's attorney, Colleen Mulgrew, spent 5 hours researching and writing th[e] motion [to quash]"; (2) $500, where Ms. Mulgrew "expect[s] at least an hour will be required if appearances are required to argue th[e] motion [to quash]"; (3) $52 for "[t]he cost of filing a miscellaneous motion"; and (4) $1,115 for "lost wages" resulting from "two days of [missed] work due to the emotional distress [Ms. McEvilly] has suffered from receiving the subpoena…" Motion at 10–11. But there are several reasons why Ms. McEvilly cannot obtain the "sanction" requested.

*First*, Ms. McEvilly's motion to quash is meritless for the reasons discussed above, and incorporated herein, including non-compliance with the Court's Local Rules, untimely objections, untimely motion, and lack of "good cause" for a protective order.

12

*Second*, even if Ms. McEvilly's motion to quash were granted, she cannot demonstrate that Plaintiff "issue[d] a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *See Legal Voice*, 738 F.3d at 1185. As explained above, Ms. McEvilly's involvement in the incident giving rise to this action renders Plaintiff's issuance of the subpoena reasonable. *See* Merin Decl. Ex. 1 at DEF 00005. Thus, the subpoena resulted from nothing more than "normal advocacy." *See Mount Hope Church v. Bash Back*, 705 F.3d 418, 426 (9th Cir. 2012); *see also id*. at 429–30 ("The scope of permissible sanctions under Rule 45[d](1) should not be so broad as to chill or deter the vigorous advocacy on which our civil justice system depends.").

*Third*, even if Ms. McEvilly's motion to quash were granted, she has failed to support the fees which she is alleged to have incurred. For example, Ms. McEvilly seeks $3,000 for attorney's fees based on argument that Ms. Mulgrew "charges $500 per hour (after attorney discount)," "spent 5 hours researching and writing th[e] motion [to quash]," and "expect[s] at least an hour will be required if appearances are required to argue th[e] motion [to quash]." Motion at 10. But Ms. Mulgrew's rate and hours expended are not documented or supported anywhere in the record. *See*, *e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007) ("The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed."). Even if they were adequately documented, the rate and hours expended by Ms. Mulgrew do not appear to be reasonable, based on the deficient and non-compliant work product produced. *See*, *e.g.*, *id*. at 948 ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."). Additionally, Ms. McEvilly cannot recover $1,115 for alleged "lost wages" resulting from "two days of [missed] work due to the emotional distress [Ms. McEvilly] has suffered from receiving the subpoena…" *See* Motion at 10–11. Again, Ms. McEvilly fails to documents or support the alleged lost wages, including the hours missed and the rate. But, more importantly, Rule 45(d)(1) sanctions only encompass "the burden associated with compliance." *Mount Hope Church*, 705 F.3d at 427, 428 ("the burdens of complying with the subpoena are the ones that count"). Ms. McEvilly's "two days of [missed] work" were not associated with compliance with the subpoena. Rather, Plaintiff's counsel offered to accommodate Ms. McEvilly by (again) "reset[ting] it at a time that may be more convenient for [Ms. McEvilly]," Merin Decl. Ex. 9—

13

including on date when she will not incur "lost earnings."

### IV.    CONCLUSION

For the reasons stated, Ms. McEvilly's motion to quash should be denied.

Dated: March 20, 2024                          Respectfully Submitted,

By: _____
       Mark E. Merin
       Paul H. Masuhara
       LAW OFFICE OF MARK E. MERIN
       1010 F Street, Suite 300
       Sacramento, California 95814
       Telephone: (916) 443-6911
       Facsimile: (916) 447-8336

       Attorneys for Plaintiff
       SALVADOR GARCIA JR.

14